IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAMOUNT AUSTIN,

     Plaintiffs,

vs.                                  Civ. No. 16-cv-00058-KG-LF

EVERBANK, AND DOE UNKNOWN,

     Defendants,

and

FEDERAL NATIONAL MORTGAGE
ASSOCIATION d/b/a FANNIE MAE,

     Intervenor.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon various motions, including Intervenor Federal National Mortgage Association's (Fannie Mae) Opposed Motion to Dismiss Plaintiff's Complaint (Motion to Dismiss), filed May 6, 2016; and Fannie Mae's Motion to Strike, in part, Plaintiff's "Response to Defendant's Answer and Motion," (Motion to Strike) filed June 20, 2016. (Docs. 18 and 25). Plaintiff LaMount Austin (Plaintiff) did not respond. On June 28, 2016, Defendant Everbank filed a Notice of Joinder to Intervenor Fannie Mae's pending motions. (Doc. 27).

On September 30, 2016, the Court held a hearing on the pending motions. Counsel for Defendant Everbank, Mario Franke, appeared telephonically. Bobbie Jo Collins, counsel for Intervenor Fannie Mae, appeared in person. Plaintiff did not appear. For the reasons stated on the record at the September 30, 2016, hearing, the Court hereby dismisses Plaintiff's Complaint

(Doc. 1) for failure to prosecute.  The Court, alternatively, having considered the pending motions and the applicable law, grants Intervenor Fannie Mae's and Defendant Everbank's Motion to Strike and Motion to Dismiss.

> A.     *The Complaint (Doc. 1)*

On January 26, 2016, *pro se* Plaintiff filed the Complaint (Doc. 1) in this Court.  Pursuant to NMSA 1978, § 42-6-12, Plaintiff moves for quiet title of real property located at 3026 Ashkirk SE Rio Rancho, New Mexico, 87124, ("subject property") located in Sandoval County.

In the Complaint, Plaintiff alleges that he purchased the deed to the subject property.  The Complaint does not state when the purchase took place.  At the time of purchase, Plaintiff was informed by the Sandoval County Records Office, that if Plaintiff attempted to sell the deed, he could not issue a full warranty deed to a new buyer.  Instead, due to a possible "cloud of title," the deed may be issued as a "special warranty deed."  Plaintiff asserts that he contacted the presumed "true lien holder of the property, in order to pay off and clear up any attachments and all liens."  (Doc. 1) at 2.  According to Plaintiff, no one has come forward to accept said monies.

Plaintiff also claims that due to the numerous electronic filings of ownership, Sandoval County has clouded the title to the subject property.  Plaintiff further asserts that Defendant Everbank, a member of the MERS Securitization, does not have standing to file for foreclosure on the subject property due to the broken chain of title issue.  The gravamen of Plaintiff's Complaint appears to be that Defendant Everbank cannot establish the chain of ownership because Defendant Everbank only took possession of the mortgage and not the note.

> B.     *Undisputed Factual & Procedural History*[1]

---

[1] *See* (Doc. 25).  The Court takes judicial notice of the state court docket and proceedings. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.")

a. Original Property Purchase

On October 14, 2011, Dana Remer and Tony Remer (collectively, "Remers") executed and delivered to TexStar Lending, Inc., a note in the principal sum of $236,000.00. That same day, as security for repayment of the debt evidenced by the note, the Remers executed a Deed of Trust in favor of Mortgage Electronic Registration Systems, Inc. solely as a nominee for TexStar Lending, Inc. filed for record in Sandoval County, New Mexico, on October 21, 2011, in Book 414, at Page 24379, as Document No. 2011024379. The mortgage secured an interest in the real property commonly known as 3026 Ashkirk Pl. SE, Rio Rancho, New Mexico 87124 (subject property), and legally described as:

> LOT NUMBERED EIGHTEEN (18) IN BLOCK NUMBERED SEVEN (7) OF THE GLENEAGLES AT HIGH RESORT, CITY OF RIO RANCHO, TOWN OF ALAMEDA GRANT, SANDOVAL COUNTY, NEW MEXICO, AS THE SAME IS SHOWN AND DESIGNATED ON THE PLAT THEREOF, FILED IN THE OFFICE OF THE COUNTY CLERK OF SANDOVAL COUNTY, NEW MEXICO, ON OCTOBER 21, 1987, IN VOL, 3, FOLIO 679-B (RIO RANCHO ESTATES PLAT BOOK NO. 5, PAGE 12-13).

b. Foreclosure Action

The servicer of the mortgage at the time, Defendant Everbank, was the holder of the note and assignee of the mortgage, as shown by an Assignment of Mortgage dated October 29, 2013, and recorded it on November 4, 2013, in Book 416, at Page 30105, as Document No. 2013030105, in the records of Sandoval County. The Remers later defaulted on the note and failed to cure the default.

On March 7, 2014, Defendant Everbank, as assignee of the mortgage and servicer of the mortgage loan filed a Complaint for Foreclosure of the Mortgage securing an interest in the subject property in the state Foreclosure Action. The Foreclosure Action was properly

commenced in the name of Everbank, pursuant to Fannie Mae guidelines, and has been pursued in the name of Everbank by the current servicer, Ditech Financial LLC, under a Limited Power of Attorney, for Fannie Mae and in accordance with NMRA, Rule 1-025.

On April 8, 2014, a Notice of Lis Pendens was recorded against the subject property in the Sandoval County Clerk's Office records as Document No. 2014007149.  The Notice of Lis Pendens was attached in the state Foreclosure Action to the pleading entitled, "Plaintiff's Response to LaMount Austins' Motion to Intervene."  The Remers were not represented by counsel and did not file an Answer to the Complaint for Foreclosure.

On June 22, 2015, a default judgment was entered against the Remers in the state Foreclosure Action.  On July 14, 2015, a Notice of Sale was filed with the state court indicating a foreclosure auction by the Special Master would be held on August 4, 2015.  Additionally, a certificate of mailing indicated copies of the Default Judgment for Foreclosure and Order of Sale and Notice of Sale were mailed to the Remers.

       c.   <u>Plaintiff's Interest in the Subject Property & Intervention in State</u><br>            <u>Foreclosure Action</u>

On July 29, 2015, Mr. Remer executed a warranty deed in favor of Plaintiff in consideration of $500.00. The deed states—on its face—the conveyance was made subject to the Everbank mortgage. The warranty deed was attached in the state Foreclosure Action to Plaintiff's pleading entitled, "Motion to Intervene."

On August 3, 2015, Plaintiff filed a Motion to Intervene in the state Foreclosure Action requesting a stay of the foreclosure sale and relief from the default judgment.  On August 4, 2015, the subject property was sold at the foreclosure auction to Fannie Mae.  On January 5, 2016, a hearing on Plaintiff's Motion to Intervene was held, and the Motion to Intervene was

denied.

    d.  <u>Confirmation of Foreclosure Sale</u>

On January 15, 2016, the Special Master filed her report which indicates the sale of the property was held on August 4, 2015, and Fannie Mae had the highest bid.  On January 21, 2016, an Order Confirming Sale and Special Master's Report was entered by the state court.  The Order Confirming Sale refers to the "Defendants'" (the Remer's) right of redemption within one month of entry of the Order.

On February 2, 2016, the Special Master's Deed was recorded in the Sandoval County records as Document No. 2016002263, and is attached to Fannie Mae's Motion to Intervene filed on March 31, 2016.  See (Doc. 13) Ex. 1.  The Special Master's Deed is effective as of August 4, 2015, (the date of the foreclosure sale), and conveys the subject property to Fannie Mae.

    e.  <u>Plaintiff's Federal Action</u>

On January 26, 2016, after the state court denied Plaintiff's Motion to Intervene and after the filing of the Order Confirming Sale and the Special Master's Report in the state Foreclosure Action, Plaintiff filed the Complaint to Quiet Title in this Court.  *See* (Doc. 1).

On February 2, 2016, (the same day as recording of the Special Master's Deed), Plaintiff filed in state court a Request to Set Aside Final Judgment in the Foreclosure Action; and, on March 18, 2016, Plaintiff filed a Motion to Restrain Eviction in the state Foreclosure Action.[2] On Wednesday, May 4, 2016, a hearing in state court was held in both of these matters. Intervenor Fannie Mae maintains that Plaintiff's motions were denied.

On April 26, 2016, this Court granted Fannie Mae's Motion to Intervene.  (Doc. 15).  On

---

[2] Plaintiff filed the Motion to Restrain Eviction on behalf of a tenant Plaintiff had placed in the subject property, who received a three-day notice to vacate.

July 22, 2016, Magistrate Judge Laura Fashing granted Intervenor Fannie Mae's Motion to Stay

Scheduling Order Deadlines and Discovery.  (Doc. 26).

      *C.*     *Standard of Review*

      In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded

allegations as true and must view them in the light most favorable to the plaintiff.  *See Zinermon*

*v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  Rule

12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief

through more than labels, conclusions and a formulaic recitation of the elements of a cause of

action.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

      To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to

state a plausible claim of relief.  *Id*. at 570.  A claim is facially plausible if the plaintiff pleads

facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged

misconduct.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  *Id.*  Granting a Rule 12(b)(6), however,

"is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the

liberal rules of pleading but also to protect the interests of justice."  *Cayman Exploration Corp.*

*v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quotation omitted).

      While the Tenth Circuit requires that pleadings filed by *pro se* litigants be held to a less

stringent standard than that of a lawyer, this District has long insisted that pro se parties follow

the same rules of civil procedure as any other litigant.   *Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991) (internal citation omitted); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d

836, 840 (10th Cir. 2005).  Nor are the courts to act as advocates for *pro se* parties.  *Hall*, 935

F.2d at 1110.

    D.    *Discussion*

        a.  <u>Dismissal for Failure to Prosecute</u>

As a preliminary manner, Plaintiff has established a pattern of non-participation and non-compliance in this case.  Federal Rule of Civil Procedure 41(b) provides, in pertinent part, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  The Tenth Circuit has consistently interpreted Rule 41(b) "to permit courts to dismiss actions *sua sponte* for a plaintiff's failure to prosecute."  *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003).  A dismissal for lack of prosecution "is within the trial court's sound discretion."  *S.E.C. v. Power Res. Corp.*, 495 F.2d 297, 298 (10th Cir. 1974).

"There is no precise rule as to what circumstances justify a dismissal for failure to prosecute.  Instead, the procedural history of each case must be examined to make such a determination."  *Id.*  The factors a court should consider in reaching this determination include:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal quotation omitted).  Dismissal is warranted only when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits."  *Id.*  "[D]ismissal represents an extreme sanction appropriate only in cases of willful misconduct . . . .  Because dismissal with prejudice defeats altogether a litigant's right to access to the courts, it should be used as a weapon of last, rather than first, resort."  *Id.* at 920 (internal quotation omitted).  Especially in cases in which a litigant

"appears *pro se*, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its rights of access to the courts because of a technical violation." *Id.* at n.3.

In this matter, as noted above, Plaintiff did not respond to the Motion to Dismiss or the Motion to Strike. Furthermore, Plaintiff failed to appear at the 9:00 A.M., September 30, 2016, motions hearing. The Court, granting Plaintiff leniency because the hearing was originally set for 10:00 A.M., recessed and reconvened at 10:00 A.M. Plaintiff, nevertheless, did not appear.

When Plaintiff has participated in this matter, he has demonstrated an inability to comply with the local and federal rules of procedure. For instance, on June 1, 2016, Plaintiff filed a "response" to Defendant Everbank's Answer. (Doc. 22). Pursuant to Fed. R. Civ. P. 7(a)(7), a reply to an answer is permissible if the Court orders so. This Court did not order such a reply. Consequently, Plaintiff's "response" is a clear violation of Rule 7(a)(7). Hence, the Court will strike Plaintiff's "response" (Doc. 22).

Moreover, in that same motion, Plaintiff responded to Fannie Mae's Motion to Intervene. *See* (Doc. 22). Plaintiff's response, however, is extremely untimely. Under the Local Civil Rules for the District of New Mexico, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M. LR-Civ. 7.1(b). "A response must be served and filed within fourteen (14) calendar days after service of the motion." Id. at 7.4(a). In this matter, Fannie Mae filed its Motion to Intervene on March 31, 2016. (Doc. 13). Plaintiff's response was due on April 14, 2016. On April 26, 2016, this Court, *sua sponte*, granted the Motion to Intervene. (Doc. 15). Notably, this Court found that intervention was warranted because Fannie Mae met the requirements for intervention under Fed. R. Civ. P. 24(a)(2) and because Plaintiff failed to

respond.  Pursuant to this District's local rules, the Court finds that Plaintiff consented to the

Motion to Intervene and, therefore, Plaintiff's response is stricken from the record.

     Based on the foregoing, the Court finds the facts alone are sufficient grounds for the

Court to dismiss this case with prejudice in accordance with Fed. R. Civ. P. 41(b) and *Olsen*,

333 F.3d at 1204 n.3.  Alternatively, the Court finds that dismissal of Plaintiff's Complaint,

(Doc. 1), against Defendant Everbank and Intervenor Fannie Mae is warranted under the

*Colorado River* doctrine.

### b.  Dismissal with Prejudice Pursuant to the *Colorado River* Doctrine

     Intervenor Fannie Mae and Defendant Everbank argue that this Court should dismiss the

case under the *Colorado River* doctrine or, alternatively, dismiss under the *Rooker-Feldman*

doctrine, *res judicata*, or for a lack of standing.  Because the Court finds dismissal is proper in

accordance with the *Colorado River* doctrine, the Court need not address  Intervenor Fannie

Mae's and Defendant Everbank's alternative contentions.

     The *Colorado River* doctrine controls when determining "whether a district court should

have stayed or dismissed a federal suit pending the resolution of a parallel state court

proceeding."  *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).  The doctrine springs

from judicial economy concerns that may justify deferral of a federal case when pending state

litigation will resolve the issues in the federal case.  *Id.*  In light of a federal court's "virtually

unflagging obligation" to exercise its jurisdiction, the doctrine is to be applied only when "the

clearest of justifications . . . warrant[s] dismissal" and under "exceptional" circumstances.  *Id.*  at

1303 (quoting *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 817–18

(1976).

     In ruling on whether the *Colorado River* doctrine applies, a court must first determine the

threshold issue of whether the state and federal proceedings are parallel.  *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994).  If the suits are parallel, the Court considers whether "exceptional circumstances" exist that compel abstaining from the matter.  *Id.*

*i.   The state and federal proceedings are parallel*

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  *Id.* at 1081 (internal quotation omitted).  In the Tenth Circuit, the proper analysis to determine if the proceedings are parallel "is to examine the state proceedings *as they actually exist* to determine if they are parallel to the federal proceedings."  *Id.*  (emphasis in original) (internal citation omitted).  The parallel state court action must be an adequate vehicle for the complete and prompt resolution of the issue between the parties in order to invoke the *Colorado River* doctrine.  *Id.*

Here, based on the undisputed evidence, the issues are "substantially the same" in the state court and federal action:  the parties' ownership rights in the subject property arising from the foreclosure of the mortgage recorded against the subject property.  The state action commenced on March 7, 2014, when Defendant Everbank filed a Complaint for Foreclosure of the Mortgage on the subject property.  On June 22, 2015, a default judgment was entered against the Remers in the Foreclosure Action.  On July 29, 2015, Mr. Remers, nonetheless, issued Plaintiff a warranty deed for the subject property.  The warranty deed, notably, states on its face that the conveyance was made subject to Defendant Everbank's mortgage.  Then, on August 4, 2015, Intervenor Fannie Mae purchased the subject property at a foreclosure auction.  Although Plaintiff filed a Motion to Intervene and Set Aside Default Judgment one day prior to the auction, the state court did not hold a hearing on the motion until January 5, 2016.  At that hearing, the state court denied Plaintiff's Motion to Intervene.  On January 15, 2016, the Special

Master filed her report indicating the sale of the subject property to Intervenor Fannie Mae; and on January 21, 2016, the state court issued an Order Confirming Sale of the subject property.  In the Order Confirming Sale, only the Remers are listed as the individuals with a right of redemption.

Reviewing the aforementioned state court proceedings as they actually exist, it is clear that the proceedings—*i.e.* the Foreclosure Action, sale, Special Master's Deed, Plaintiff's Motion to Intervene and request to set aside default judgment, and the state court's Order Confirming Sale—involved the ownership rights of the Remers, Defendant Everbank, Intervenor Fannie Mae, and Plaintiff in the subject property.  Moreover, the proceedings included the review and filing of the mortgage, note, Foreclosure Action, and Plaintiff's warranty deed.  Plaintiff's federal action, based on the Complaint, includes the exact same issues.  In addition, the two proceedings name the same parties, or parties in privity.[3]  Consequently, this Court finds that the two proceedings are substantially the same.

## ii.  *Exceptional circumstances do exist to warrant abstention*

The district court must consider the following non-exclusive list of factors to decide if "exceptional circumstances" exist to warrant abstention:  (1) whether either court has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious or reactive nature of either the federal or state action; (6) whether federal law applies; (7) the adequacy of the state-court action to protect the federal plaintiff's rights; and (8) whether

---

[3]  "A person in privity with another is a person so identified in interest with another that he represents the same legal right.  This definition includes a mutual or successive relationship to the rights in reality."  *Bentz v. Peterson*, 1988-NMCA-071 ¶ 12, 762 P.2d 259, 262 (internal citation omitted).  In this federal action, Intervenor Fannie Mae is a party in privity of contract with Defendant Everbank through the fee simple interest Fannie Mae acquired in the foreclosure sale of the subject property.  Similarly, Plaintiff is a party in privity of contract with Mr. Remer by virtue of the warranty deed issued to Plaintiff.

the party opposing abstention has engaged in impermissible forum-shopping. *See Fox*, 16 F.3d at 1082. No factor is independently dispositive, and the weight given to each factor is left to the district court's discretion. *Id.*

Balancing the relevant factors in this case weighs in favor of this Court abstaining. With respect to the first and fourth factors—when and whether either court assumed jurisdiction over the property—the state court obtained jurisdiction over the subject property prior to this Court. It is clear from the record that the state court assumed jurisdiction over the subject property on March 7, 2014, when Defendant Everbank initiated the Foreclosure Action. Additionally, the state court continued to maintain jurisdiction over the subject property on June 22, 2015, when the court entered a default judgment against the Remers. The state court further demonstrated jurisdiction when it entered the Special Master Report on January 15, 2016, and the Order Confirming Sale on January 21, 2016. This Court, however, did not obtain jurisdiction until January 26, 2016. The Court, thus, finds that the aforementioned demonstrates the state court's jurisdiction prior to the initiation of Plaintiff's federal Complaint.

Intervenor Fannie Mae and Defendant Everbank concede that the second factor, inconvenience of the federal forum, does not raise any issues for or against abstention.

The third factor—desirability of avoiding piecemeal litigation—strongly weighs in favor of abstention. Plaintiff, subsequent to filing the federal Complaint, moved for the state court to set aside the foreclosure and determine his interest in the subject property. Because Plaintiff is seeking the same relief in this Court, there is a possibility that the state and federal proceedings may render inconsistent judgments regarding the parties' interest in the subject property. There is also a concern regarding duplicative efforts on behalf of the state and federal courts.

The fifth factor, the vexatious or reactive nature of the federal action, and the eight factor,

forum-shopping, also weigh in favor of abstention.  Plaintiff commenced the federal action on

January 26, 2016, nineteen days after his motion to intervene was denied by the state court; and,

four days after the state court's Order Confirming Sale and the Special Master's Report were

filed.  In light of the temporal proximity of Plaintiff's federal Complaint to the state court

rulings, it is highly probable that Plaintiff filed the pending federal suit after failing to

successfully litigate in state court.

In regard to the sixth factor, Plaintiff has not pled any federal violations.  The Complaint,

on its face, states that Plaintiff moves for quiet title under NMSA 1978, § 42–6–12.[4]

Finally, with respect to the seventh factor, there is no evidence before the Court that the

state court action did not properly protect Plaintiff's interest in the subject property.

Balancing the eight relevant factors, the Court finds that exceptional circumstances do

exist to warrant abstention.  Accordingly, Intervenor Fannie Mae and Defendant Everbank are

entitled to dismissal, with prejudice, of Plaintiff's claims in the Complaint.

IT IS, THEREFORE, ORDERED that

1.  Plaintiff's Complaint (Doc. 1), filed January 26, 2016, will be dismissed with

prejudice for failure to prosecute;

2.  Intervenor Federal National Mortgage Association's and Defendant Everbank's

Motion to Strike, in part, Plaintiff's "Response to Defendant's Answer and Motion" (Doc. 25)

will be granted;

3.  Plaintiff's Response (Doc. 22), filed June 1, 2016, will be struck from the record;

---

[4] Section 42–6–12 states, in its entirety:

> Upon the conditions herein prescribed for the protection of the state of New Mexico, the consent of the state is given to be named a party in any suit which is now pending or which may hereafter be brought in any court of competent jurisdiction of the state to quiet title to or for the foreclosure of a mortgage or other lien upon real estate or personal property, for the purpose of securing an adjudication touching any mortgage or other lien the state may have or claim on the premises or personal property involved.

13

4.  Intervenor Federal National Mortgage Association's and Defendant Everbank's Opposed Motion to Dismiss Plaintiff's Complaint (Doc. 18) is granted; and

5.  Plaintiff's Complaint (Doc. 1), filed January 26, 2016, will be dismissed with prejudice.

UNITED STATES DISTRICT JUDGE